MARY E. NOSWORTHY *et al.*, plaintiffs in error, *vs.* BRYANT BLIZZARD, defendant in error.

1. Public declaration by one who was the agent both of the representative of the estate and the purchaser of land sold at administrator's sale since the act of December 17, 1859, and which was made at the time of the bidding, that the sale was had to perfect title to the person for whom the land was bid off, renders the sale open to review at the option of the parties at interest.

2. If the purchaser shows that he gave the value of the land, and though it was not paid for in money, but in other property, yet, that the representative of the estate was a creditor thereof to the amount of such value, and relied on the same for the payment of her debt, and did in fact receive the property so paid, and never made any other collection of the debt from the estate, the purchaser may, in equity, protect his title to the extent that his purchase was of value to the estate.

3. But as this point, though urged on the argument before this court, was not made by the pleadings, or, so far as the record shows, was not presented at the trial, and the evidence thereon not being full and sat-

Nosworthy *et al. vs* Blizzard.

isfactory, (the court having ruled out the statement of the administratrix appended to her returns,) we do not feel authorized to sustain the verdict on this ground.

4. In a case controlled by the acts of December 10, 1807, and December 9, 1841, a widow who did not elect to take a child's part in the land of her husband's estate, within the time prescribed by said acts, was thereafter debarred from such right; nor can the defendant in this case set up such an interest as being in the widow from whom he purchased, for the purpose of protecting his title to that extent.

Administrators and executors.   Principal and agent.   Sales. Equity.   Distribution.   Election.   Before Judge BARTLETT. Baldwin Superior Court.   August Term, 1874.

This is the second time this case has been before this court. See 50 *Georgia Reports*, 514.

In 1853 William A. Moran, of Baldwin county, died intestate, leaving a widow, Eliza F. Moran, who, the same year, administered on his estate, and two children, James H., aged three years, and Mary E , (complainant) aged one year.   Decedent, with other property, owned two hundred and eighty-five acres of land in said county, the subject matter of this litigation.

The widow, the administratrix, has never applied to the ordinary for dower or a child's part of said estate, but in January, 1856, filed her renunciation of dower.   In 1860 the administratrix sold said land to Bryant Blizzard.   In 1871 Mary E., was married to Daniel Nosworthy; in January, 1872, James H., Mary and her husband, sued Blizzard, in ejectment, for the land.   James H. died in December, 1872; at November adjourned term, the ejectment was tried, a verdict for defendant rendered, and a new trial granted, on the grounds that the verdict was contrary to the evidence and the charge of the court.   At that trial Blizzard produced in evidence (on notice) a deed to said land to himself, from said Eliza F. Moran, administratrix, dated April 25th, 1861.

In January, 1874, Mary E. Nosworthy, the sole surviving heir of William A. Moran, deceased, (her husband joining)

filed her bill for injunction and relief against said Blizzard and said administratrix, Eliza, in which she prayed a cancellation of said deed, and partition of said land, three-fourths of which she claimed by inheritance from her father and her brother. The grounds of cancellation are:

1st. That said deed is but a consummation of a *private sale* of land, by the administratrix, which was to be perfected by legal formality.

2d. That said sale was but a barter of land for slaves, for a change of investment, without lawful warrant.

The defendant, Blizzard, answered, in brief, as follows: In September or October, 1859, it was agreed between the administratrix, Eliza F. Moran, and defendant, that he was willing to give for said land the same price it was appraised at previously by the sworn appraisers of the estate, viz: $1,400 00, and would at lawful public sale of the land bid that price for it, and if nobody else would bid higher, then that it should be knocked down to defendant.

And further, as that bid, $1,400 00, was probably the very highest bid that could be got, and so he would be sure to get the land, it was then, at the same time, agreed verbally that at the end of the year 1859, when Fayette I. Echols' rent year should be out, and after his removal from the place, then, immediately, without any more renting out, this defendant, Blizzard, might move on said land and take possession thereof and use it without rent and without waiting for a public sale of it, and that the administratrix would go on and get leave of the ordinary to sell the land, and would then sell the same according to law, to the highest bidder, and that defendant should bid said appraised price, $1,400 00, on the credit and terms of sale aforesaid, but subject nevertheless to be outbid by a higher bidder.

And defendant further says, that according to that agreement of October or September, 1859, he did enter on said land on the 28th of December, 1859, as soon as said Fayette Echols, tenant of that year left; and that he has lived there ever since—over fourteen years—and that according also to

Nosworthy *et al. vs.* Blizzard.

that agreement, said administratrix did go on and obtain fairly and without fraud, so far as defendant knows or believes, lawful leave of the ordinary of said county, to sell said land according to law, and did afterwards actually sell it according to law, fairly, publicly, before the court-house door, on the first Tuesday in May, 1860, in lawful sale hours, after due advertisement according to law, to the highest bidder—and that this defendant's bid of $1,400 00 (payable in money, and not in negroes or anything else) was made on the terms aforesaid, and as no person bid higher, it was knocked down to his bid and he gave his note for $1,400 00, and got her bond for titles according to the terms of sale and agreement—which note he afterwards, on 10th July, 1860, paid off in valuable property, as aforesaid, which he, on that day, 10th July, 1860, and never before, bargained and sold to her for $1,600 00.

M. R. Bell, former ordinary, testified that the records and files of the ordinary's office contained no application for dower or child's part of W. A. Moran's estate, by the widow, Eliza F.   Her recorded return, as administratrix, of 8th January, 1856, showed a renunciation of dower.

Joseph J. Simpson and Everett E. Stanley testified that they were at the public sale, on 3d May, 1860; that A. H. Kenan read aloud the advertisement, and proclaimed that the sale was to perfect titles to Bryant Blizzard at $1,400 00; that Ennis, sheriff, cried the property ; that Kenan made the only bid, $1,400 00, and the property was knocked off to that bid, to Blizzard.  Simpson stated that he knew of the private sale before that day.

The following paper, produced by defendant, on notice, was read in evidence :

"MILLEDGEVILLE, 10th July, 1860.

" This is to show that Mrs. Eliza Moran and Bryant Blizzard have this day bargained, to-wit : Mrs. Moran, as administratrix, and by the consent of the ordinary, agrees to give the tract of land belonging to the estate of William Moran, and upon which Blizzard is residing, and one hundred and

fifty dollars besides, payable on the 25th December next, for a negro woman, Corinna, and her male child, about four years old—the title and health of said negroes, he, Blizzard, warrants, and Mrs. Moran warrants and defends the title to the land, said land containing two hundred and eighty-five acres, more or less.

" A. H. KENAN,
" *Attorney for Mrs. Moran.*
" B. BLIZZARD."

"As soon as the ordinary passes the order which he has agreed to do, then mutual titles to be made.

"KENAN, *for Mrs. Moran.*
"B. BLIZZARD."

The following was read in evidence:

" MILLEDGEVILLE, 5th July, 1860.

"Received of Eliza F. Moran, administratrix of the estate of William Moran, deceased, $1,552 00, in full consideration for a negro woman, Corinna, and her male child, about four years old, the title and health of said negroes I warrant and defend unto the said Eliza F. Moran, her heirs and assigns.

" B. BLIZZARD."

It was also shown that Kenan, at the sale of May, 1860, acted both as the agent of the administratrix and of Blizzard. The latter testified substantially to the facts set forth in his answer.

It also appeared in evidence that the estate was indebted to the administratrix, on January 18th, 1856, in the sum of $1,155 16, and there was no proof that this amount had ever been paid, unless by the receipt of the negroes taken from Blizzard.

The court charged the jury, amongst other things, as follows:

"1st. If you believe from the evidence that the public sale of May 3d, 1860, was in pursuance of a private agreement that Blizzard should have the land at a stipulated price, and that said public sale was made for the purpose of perfecting

title by legal formality, then the whole transaction was illegal and void."

"2d. Eliza's deed, as administratrix, to Blizzard, is good, at least so far as to pass all her interest to him.   Her interest at first was a child's part—one-third.   Each child had one-third and on the death of James, the son, without widow or child, his one-third went equally to his mother, Eliza, and his sister, Mary.   After that the mother's share was one-third and one-half of one-third—one-half of the whole, and if Mary Nosworthy has any right at all, it is to one-half of said land only."

The jury found a verdict for the defendant.   The complainants moved for a new trial because the verdict was contrary to the evidence, the law; the charge of the court, and because the court erred in the second proposition of the aforesaid charge.

The motion was overruled, and the complainants excepted.

CRAWFORD & WILLIAMSON, for plaintiffs in error.

WILLIAM MCKINLEY, for defendant.

TRIPPE, Judge.

1. The act of December 17, 1859, makes valid all sales of real estate theretofore made by executors, administrators, etc., by private contract, and afterwards advertised and sold at public outcry for the purpose of perfecting titles.   The sale in this case was made at public outcry, after the passage of that act, to-wit: in May, 1860.   It appears that the person who bid off the land for defendant in error was both his agent and the agent of the administratrix.   At the time of the sale it was declared publicly that it was made to perfect titles to the defendant in error.   We think this brings the sale within the rule that makes such sales open to review at the option of the parties at interest: Code, section 2566; and that under the evidence there should be a rehearing of the case.

2. If such a purchaser can show that he gave the value of the land, and that though it was paid for in other property,

yet the administratrix was a creditor of the estate to the amount of such value, and did in fact receive the property in which payment was made, and never made any other collection of her debt from the estate, he can, in equity, protect his title to the extent that his purchase was of benefit to the estate. This principle is always recognized where one has dealt with a trustee, and the beneficiaries of the trust estate have had the benefit of what was received from him. Although his contract with the trustee may not be legal and valid, yet he has a right to reimbursement to the extent of what he has added to the trust estate, or to the extent that the *cestui que trusts* have had the benefit of his property.

3. But the difficulty with the defendant in error is, that the evidence did not sufficiently show such a state of facts as will authorize him to claim the benefit of this rule. There was a statement in writing appended by the administratrix to her returns, looking that way, and this statement appears in the record. But it also appeared that it was ruled out as evidence, upon being objected to, and of course the defendant can take no benefit from it in this court.

4. The further question was presented, whether a widow who did not elect to take a child's part in the land of her husband, was thereafter debarred by the acts of December 10th, 1807, and December 9th, 1841, from asserting that right. This case is controlled by those acts, the husband having died in 1853, intestate. By both of said acts it is declared that if a widow shall fail to make her election out of the estate of her husband within the time prescribed, she shall be considered as having taken her dower, and shall forever after be debarred from taking any other part. The act of 1807 makes the time within which this election is to be made, one year from the death of the husband. By the act of 1841 it is changed to one year after letters testamentary or of administration have been granted, and this latter act reaffirms the disability on her failing so to elect. The terms of both acts are clear and positive, and are a bar to the right of a widow to assert any claim to an interest except dower in these lands.

This being so, and she having been barred at the time the land was purchased by the defendant, he cannot set up such an interest in her for the purpose of protecting his title to that extent.

Judgment reversed.